Caroline Tucker, Esq.
Tucker | Pollard
2102 Business Center Dr., Suite 130
Irvine, CA 92612
Office 949-253-5710
Fax 949-269-6401
ctucker@tuckerpollard.com

*Attorney for Objector*
JUSTIN FERENCE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREAN BARRERA, On Behalf of Herself and All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>PHARMAVITE, LLC, a California limited liability company<br><br>　　　　　　　Defendant. | CASE NO. 2:11-cv-04153-CAS (AGrx)<br><br>CLASS ACTION<br><br>**OBJECTION TO CLASS ACTION SETTLEMENT** |

## **OBJECTION**

Class member and objector, Justin Ference, ("hereinafter Objector") opposes the approval of the class action settlement. A district court may approve a class action settlement only if the settlement is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). The district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and ... the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *In re Bank of Am. Corp. Securities, Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) citing *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 419 (2d Cir. 2010).

---
**OBJECTION;** Lorean Barrera v. Pharmavite; 2:11-cv-04153-CAS

   "Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013).  Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. *Id*. "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id*.

   Rule 23(a)(4), grounded in the Due Process Clause of the Constitution, conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." 23(g)(4) imparts an equivalent duty on class counsel, especially weighty "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Together these provisions demand that the named representatives and class counsel manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).

   Here, the prospective injunctive relief settlement with a small cash component of $1,000,000 juxtaposed against a huge $3,485,000 award to counsel and the named representatives (not including costs and expenses), combine to indicate inadequate representation.  "If the class settlement does not provide effectual relief to the class and its principal effect is to induce the defendants to pay the class's lawyers enough to make them go away, then the class representatives have failed in their duty under Rule 23 to fairly and adequately protect the interests of the class. And if the class representatives have agreed to a settlement that provides meaningless relief to the putative class, the district court should refuse to certify…the class." *In re Subway Footlong Sandwich Mktg. and Sales Practices Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) (internal quotations omitted). Here, both class counsel and the named represented have now signed off upon a settlement that divides $4,085,000 out of the total cash settlement funds of $5,085,000 between

themselves, leaving absent class members with an injunction that is only effective for a maximum period of 24 months and to share, among several millions of class members, a small cash fund of $1,000,000. Such representation is inadequate.

The proposed labeling requirement in the settlement agreement should not be considered a benefit to the class. The labels can still use the words, "support," "sustain," maintain," "protect," "comfort," "promote," "comfort," "flex," and "mobile." See Settlement Agreement p. 18. The only words now prohibited on labeling, but only for a maximum of 24 months, are "rebuild" and "rejuvenate." This 24-month ban on these 2 words is not even certain as the settlement expressly states circumstances in which it can be avoided. See Settlement Agreement p. 19. Furthermore, the Defendant is not required to recall or relabel any current packages with this wording. In sum, these proposed changes to business practices are not only worthless, but may leave the class in a worse position than they were prior to the settlement of the class action. The Court should not consider any of these proposed labeling changes as a benefit to the class.

The settlement also unfairly limits the amount of money that a class member can receive. If a consumer can provide valid proofs of purchase for more 4 covered products, then they should be able to receive additional compensation. They should not be capped arbitrarily.

The settlement is also unfair and unreasonable for class members because funds may go to a *cy pres* recipient, Feed the Children or AARP, instead of class members. "Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible '*only* when it is not feasible to make further distributions to class members' .... except where an additional distribution would provide a windfall to class members with *liquidated*-damages claims that were 100 percent satisfied by the initial distribution." *In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015).

The settlement agreement does not clearly indicate how undeliverable or uncashed funds will be handled. At what point, if at all, will a second (or third) distribution occur? The settlement administrator should make an additional distribution pro rata to the class members who already cashed the first round of checks. As stated above, the settlement funds belong to class members

and should be delivered to them to the extent possible. *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015). The class members should receive all class benefits until infeasible and not be awarded to a cy pres recipient.

Next, the proposed cy pres recipients, Feed the Children and AARP are not the appropriate recipients for cash or product. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. See *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir.1990). Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). These organizations, though likely worthy organizations, have nothing to with the nature of the plaintiff's lawsuit, the objectives of the underlying statutes, and the interests of silent class members. The Court has a responsibility to the class to ensure that the class's money is used in connection with class member's interest. Furthermore, there is "no reasonable certainty" that any class member would benefit from it from these cy pres distributions. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

Like in *Dennis v. Kellogg Co.*, donating products to a charity because it related to food has nothing to do with claims in this case. In *Dennis v. Kellogg Co.*, the Court summarized that case as follows: "The gravamen of this lawsuit is that Kellogg advertised that its cereal did improve attentiveness. Those alleged misrepresentations are what provided the Plaintiffs with a cause of action under the UCL and the CLRA, not the nutritional value of Frosted Mini–Wheats. Thus, appropriate cy pres recipients are not charities that feed the needy, but organizations dedicated to protecting consumers from, or redressing injuries caused by, false advertising." *Id*. This case has not only similar allegations to the *Kellogg's* case (misleading labeling), but also a similar proposed cy pres organization to donate Defendant's products to instead of providing them to class members (Feed the Children). Like in *Kellogg's*, a more appropriate cy pres recipient is a national organization devoted to fighting against false labeling and packaging.

4

_____
**OBJECTION;** Lorean Barrera v. Pharmavite; 2:11-cv-04153-CAS

The Court should closely examine the amount of product that will actually go to class members and use this received value of product to class members for calculation of attorney's fees. Objector anticipates that the majority of class members will request cash and that relatively little amount of the product will be requested. Only the amount of money or actual product going to class members should be used to calculate the proper amount of attorney's fees. The Court should only give class counsel 25% of the amount the class receives. The product sent to a cy pres recipient should not be considered in evaluating attorney's fees. For example, if class members were to receive $1,000,000 in a direct cash benefit and $1,000,000 in products, then the attorney fees should be set at $500,000 (25% of $2,000,000).

In any event, the amount of attorney's fees requested is extraordinary. Counsel is requesting an-all cash payment of $3,475,000, which is outrageously high compared to the meager amount of $1,000,000 to be split between millions of class members. Even if the proposed amount of $5,900,000 of product were actually distributed to class members (which is highly unlikely), then a fee award of $3,475,000 is still way above the standard 25% of attorney's fees that has been approved by the 9th Circuit. This amount request to roughly 50% of the attorney's fees, which is far beyond a reasonable percentage. Additionally, the requested $10,000 amount requested for the class representative is too high. Class representatives should get a maximum of $2,500.

Next, Rule 23(h) that motions for attorneys' fees "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner," so that "[a] class member, or a party from whom payment is sought, may object to the motion." Fed. R. Civ. P. 23(h)(1), (2). As of today's date, the fee motion has not be posted on the class website https://www.glucosaminesupplementsettlement.com/Docs.aspx. Rule 23(h) requires class counsel to file their fee motion – and direct it to interested class members – well before the time to opt-out or object. The 2003 Advisory Committee Note to Rule 23(h) emphasizes: "In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." The Ninth Circuit "requires a district court to set the deadline for objections to counsel's fee request on a date *after* the motion and documents

**OBJECTION;** Lorean Barrera v. Pharmavite; 2:11-cv-04153-CAS

supporting it have been filed." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (emphasis in original). As of November 11, 2017, the date the website was last viewed, the fee motion was not posted on the class website.

Neither Objector nor I intend to appear at the fairness hearing.

The Court should deny final approval of the settlement.

Date: 11-13-17

I am a Member of the Settlement Class and purchased a Covered Product during the Class Period per my online claim.

_____

Justin Ference, Objector

8424 N. Foothills HWY

Boulder CO 80302

937-509-4740

                                    Tucker | Pollard

                                    By: _____

                                          Caroline Tucker
                                          *Attorney for Objector*

**OBJECTION;** Lorean Barrera v. Pharmavite; 2:11-cv-04153-CAS

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |

2

3   I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

4   November 13, 2017, and served by the same means on all counsel of record.

5

6                                                                                          /s/ Caroline Tucker

7                                                                                          _____

8                                                                                          Caroline Tucker

_____
**OBJECTION;** Lorean Barrera v. Pharmavite; 2:11-cv-04153-CAS