BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Patricia N. Syverson (203111)
Manfred Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Elaine A. Ryan (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
Telephone: (602) 274-1100

SIPRUT, PC
Stewart M. Weltman
17 N. State Street, Suite 1600
Chicago, IL 60602
sweltman@siprut.com
Telephone: (312) 236-0000

[*Additional Counsel Appear On Signature Page*]

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREAN BARRERA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PHARMAVITE LLC, a California limited liability company,<br><br>Defendant. | Case No.:  2:11-cv-04153-CAS (AGrx)<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND RESPONSE TO OBJECTION**<br><br>Date:    December 4, 2017<br>Time:   10:00 a.m.<br>Courtoom: 8D-8th Fl.<br>The Hon. Christina A. Snyder |

# **TABLE OF CONTENTS**

**PAGE**

I.  INTRODUCTION ................................................................................. 1

II. CLASS NOTICE, CLAIMS PROCESS, AND RESPONSE BY
    THE CLASS ...................................................................................... 2

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE
     PROPOSED SETTLEMENT AS IT IS FAIR, REASONABLE
     AND ADEQUATE ............................................................................. 3

   A.  The Standards for Final Approval of Class Action Settlements ................. 3

      **1.** The Strengths of Plaintiff's Case and Risk, Complexity,
            Expense, and Duration of the Litigation Favor Final Approval ............. 5

      **2.** The Substantial Relief Provided by the Settlement Agreement
            Favors Final Approval ...................................................................... 6

      **3.** The Stage of the Proceedings, Experience and Views of Counsel
            Favor Final Approval ....................................................................... 8

      **4.** The Settlement Was Reached After An Arm's Length Mediation
            Session Conducted Before a Neutral Mediator (Magistrate Judge
            Jay C. Gandhi), and Numerous Subsequent Negotiations
            Conducted With His Guidance ........................................................... 9

      **5.** The Reaction of the Settlement Class Members Favors Final
            Approval ........................................................................................ 12

         a.  The Injunctive Relief Provided by the Settlement is Meaningful . 14

         b.  The Value of the Relief Provided to the Class Is
             Sufficient ............................................................................. 16

         c.  The *Cy Pres* Provisions of the Settlement Have Been
             Mooted as the Fund will be Claimed in Full ................................. 17

         d.  Settlement Class Counsel's Attorneys' Fees and Cost
             Request Is Reasonable .............................................................. 18

         e.  Plaintiff's Incentive Award Request is Reasonable ................. 20

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............... 20

   A.  The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a) .... 21

      **1.** Numerosity .................................................................................. 21

      **2.** Commonality ................................................................................ 21

      **3.** Typicality ................................................................................... 22

**4.** Adequacy of Representation ................................................................. 23

B.    The Settlement Class Should Be Certified Under Federal Rule of Civil
      Procedure 23(b)(3) ........................................................................... 24

      1. Common Questions Predominate Over Individual Issues ................. 24

      2. A Class Action Is The Superior Method to Settle This
         Controversy .................................................................................. 26

V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE
      REQUIREMENTS OF DUE PROCESS ............................................ 27

VI.   PLAINTIFF SHOULD BE APPOINTED SETTLEMENT CLASS
      REPRESENTATIVE AND CLASS COUNSEL SHOULD BE
      APPOINTED FOR THE SETTLEMENT CLASS............................... 30

VII.  CONCLUSION ...................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 (1997) ...............................................................24, 25, 27

*Asghari v. Volkswagen Grp. Of Am., Inc.*
    42 F. Supp. 3d 1306 (C.D. Cal. 2013) .........................................8

*Big 5 Sporting Goods Song-Beverly Cases*
    JCCP No. 4667 (Cal. Super. Ct. Los Angeles Cnty.) ...........................13

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980).......................................................18, 23

*Chun-Hoon v. McKee Foods Corp.*
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ...............................11, 12

*Churchill Village, LLC v. Gen. Elec. Co.*
    361 F.3d 566 (9th Cir. 2004) ...................................4, 12, 28

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ...........................................2

*Deposit Guaranty Nat'l Bank v. Roper*
    445 U.S. 326 (1980) ...................................................27

*Dukes v. Wal Mart Stores, Inc.*
    603 F.3d 571 (9th Cir. 2010) ...........................................4

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) ...................................................27

*Fine v. ConAgra Foods, Inc.*
    2010 WL 3632469 (C.D. Cal. Aug. 26, 2010) .........................22

*Gallucci v. Boiron, Inc.*
    2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) .........................12

*Garcia v. Gordon Trucking, Inc.*
    2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ........................................ 13

*Gartin v. S & M Nutec, LLC*
    245 F.R.D. 429 (C.D. Cal. 2007) ........................................................ 25

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .................................................. *passim*

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) ............................................................ 23

*Hartless v. Clorox Co.*
    273 F.R.D. 630 (S.D. Cal. 2011) .................................................. 24, 26

*Hashw v. Dept. Stores Nat'l. Bank*
    No. 0:13cv727 (D. Minn) .................................................................. 14

*Hendricks v. Ference (objector) v. Starkist Co.*
    2017 WL 1338054 (9th Cir. April 7, 2017) ........................................ 13

*In re Ameer Hashw* No. 16-2506
    2016 WL 4009798 (8th Cir. July 22, 2016) ........................................ 13

*In re Austrian & German Bank Holocaust Litig.*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................ 12

*In re Checking Account Overdraft Litig.*
    275 F.R.D. 654 (N.D. Fla. 2011) ...................................................... 10

*In re: Easysaver Rewards Litig.*
    2016 WL 419048 (S.D. Cal. Aug. 9, 2016) ...................................... 20

*In re Emulex Corp.*
    210 F.R.D. 717 (C.D. Cal. 2002) ...................................................... 24

*In re Ferrero Litig.*
    2012 WL 2802051 (S.D. Cal.  July 9, 2012) .................................... 18

*In re First Alliance Mortg. Co.*
    471 F.3d 977 (9th Cir. 2006) ............................................................ 21

*In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*
        55 F.3d 768 (3d Cir. 1995) ....................................................................... 10

*In re Groupon Marketing & Sales Practices Litig.*
        No. 16-55615, 2016 WL 6566416 (9th Cir. Nov 2, 2016) ..................................... 13

*In re High-Tech Emp. Antitrust Litig.*
        2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..................................................... 19

*In re Hydroxycut Mktg. & Sales Practices Litig.*
        2014 WL 6473044 (S.D. Cal. Nov. 18, 2014) ...................................................... 9

*In re Magsafe Apple Power Adapter Litig.*
        2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ...................................................... 17

*In re Mego Fin. Corp. Sec. Litig.*
        213 F.3d 454 (9th Cir. 2000) ....................................................................... 17

*In re Mercury Interactive Corp. Sec. Litig.*
        618 F.3d 988 (9th Cir. 2010) ....................................................................... 12

*In re Omnivision Techs.*
        559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................ 9

*In re Online DVD-Rental Antitrust Litig.*
        779 F.3d 934 (9th Cir. 2015) ........................................................................ 7

*In re Pacific Enter. Sec. Litig.*
        47 F.3d 373 (9th Cir. 1995) .......................................................................... 4

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*
        962 F. Supp. 450 (D.N.J. 1997) .................................................................... 17

*In re Rubber Chems. Antitrust Litig.*
        232 F.R.D. 346 (N.D. Cal. 2005) ................................................................... 30

*In re Tableware Antitrust Litig.*
        484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 29

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
        2011 WL 131522709 (N.D. Cal. Aug. 24, 2011) .............................................. 5, 19

*In re Toys R Us Antitrust Litig.*
 191 F.R.D. 347 (E.D.N.Y. 2000) ............................................................... 17

*In re Toys R US – Delaware, Inc. – Fair & Accurate Credit Trans. Act (FACTA) Litig.*
 295 F.R.D. 438 (C.D. Cal. 2014) ............................................................... 29

*In re Trans Union Corp. Privacy Litig.*
 629 F.3d 741 (7th Cir. 2011) .................................................................. 17

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Products Liab. Litig.*
 2017 WL 1047763 (9th Cir. March 17, 2017) .......................................... 13

*In re Warner Commc'ns Sec. Litig.*
 618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................... 10

*Jack v. Hartford Fire Ins. Co.*
 2011 WL 4899942 (S.D. Cal. Oct. 13, 2011) .............................................4

*Johns v. Bayer Corp.*
 280 F.R.D. 551 (S.D. Cal. 2012) ............................................................. 25

*Johnson v. General Mills, Inc.*
 275 F.R.D. 282 (C.D. Cal. 2011) ............................................................. 22

*Jordan v. Los Angeles County*
 669 F.2d 1311 (9th Cir. 1982) ................................................................ 21

*Keller v. NCAA*
 No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS113474
 (N.D. Cal. Aug. 18, 2015) ................................................................. 13, 14

*Kwikset Corp. v. Sup. Ct.*
 51 Cal. 4th 310 (2011) ...........................................................................8

*Lerma v. Schiff Nutrition Int'l, Inc.*
 2015 WL 11216701 (S.D. Cal. Nov. 3, 2015) ...............................15, 19, 29

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
 244 F.3d 1152 (9th Cir. 2001) ................................................................ 24

*Lopez v. Youngblood*
    2011 WL 10483569E.D. Cal. Sept. 1, 2011) ...................................................18, 19

*Lozano v. AT&T Wireless Services, Inc.*
    2010 WL 11515433 (C.D. Cal. Nov. 22, 2010) ........................................ 14

*Mendoza v. Hyundai Motor Co., Ltd.*
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ........................................... *passim*

*Milstein v. Huck*
    600 F. Supp. 254 (E.D.N.Y 1984) ...........................................................6

*Molski v. Gleich*
    318 F.3d 937 (9th Cir. 2003) ......................................................... 4, 23

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306 (1950) ....................................................................... 27

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................... 13

*Navarro v. Servisair*
    2010 WL 1729538 (N.D. Cal. Apr. 27, 2010) ........................................ 20

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ......................................................... 4, 6

*O'Keefe v. Mercedes-Benz USA, LL*
    214 F.R.D. 266 (E.D. Pa. 2003) ....................................................... 17

*Ozga v. U.S. Remodelers, Inc.*
    2010 WL 3186971 (N.D. Cal. Aug. 9, 2010) .......................................... 12

*Reynoso v. S. Cty. Concepts*
    2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) .......................................... 21

*Rodriguez v. West Publishing Corp.*
    563 F.3d 9485 (9th Cir. 2009) ....................................................... *passim*

*Russell v. Card (objector) v. Kohl's*
    No. 16-56493, 2017 WL 1521284 (9th Cir. April 19, 2017) ......................... 13

*Shames v. Hertz Corp.*
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ...................................................... 7, 19

*Staton v. Boeing*
    327 F.3d 938 (9th Cir. 2003) ................................................................ 23

*Tchoboian v. Parking Concepts, Inc.*
    2009 WL 2169883 (C.D. Cal. July 16, 2009) .......................................... 21

*U.S. v. McInnes*
    556 F.2d 436 (9th Cir. 1977) ................................................................. 5

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ................................................................ 26

*Van Bronkhorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 1976) ............................................................ 4, 5

*Vasquez v. Coast Valley Roofing, Inc.*
    266 F.R.D. 482 (E.D. Cal. 2010) .......................................................... 10

*Vasquez v. Super. Ct.*
    4 Cal. 3d 800, 808 (1971) ..................................................................... 27

*Walmart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011) ......................................................................... 21

*Weeks v. Kellogg Co.*
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ...................................... 18

*White v. Experian Info. Solutions, Inc.*
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................................. 9

*Wiener v. Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009) .................................................. *passim*

*Wietzke v. CoStar Realty Info., Inc.*
    2011 WL 817438 (S.D. Cal. Mar. 2, 2011) ............................................ 8

*Williams v. Costco Wholesale Corp.*
    2010 WL 2721452 (S.D. Cal. July 7, 2010) .......................................... 12

*Williams v. MGM-Pathe Commc'ns Co.*

    129 F.3d 1026 (9th Cir. 1997)................................................................ 18

*Wilson v. Gateway, Inc.*

    2014 WL 12704846 (C.D. Cal. Oct. 6, 2014)........................................ 20

*Zinser v. Accufix Research Inst., Inc.*

    253 F.3d 1180 (9th Cir. 2001) ............................................................ 26

**RULES**

Fed. R. Civ. P. 23(a)........................................................................21, 22

Fed. R. Civ. P. 23(a)(3) ........................................................................ 22

Fed. R. Civ. P. 23(a)(4) ........................................................................ 23

Fed. R. Civ. P. 23(b)(3) ...............................................................24, 26, 27

Fed. R. Civ. P. 23(c)(2)(B) .................................................................... 27

Fed. R. Civ. P. 23(e) .......................................................................... 3, 20

Fed. R. Civ. P.  23(e)(1)(C) ....................................................................4

Fed. R. Civ. P. 23(e)(2) ..........................................................................4

Fed. R. Civ. P. 23(g) ............................................................................ 23

Fed. R. Civ. P. 23(g)(1) ........................................................................ 30

Fed. R. Civ. P. 23(h)(1) ........................................................................ 19

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (*Third*) § 30.42 (1995) ........................ 10

*Manual for Complex Litigation (Fourth)* §21.62 (2004) ..........................4

4 Herbert B. Newberg, *et al.*, *Newberg On Class Actions* §11:41 (4th ed. 2002) .......... 4, 10

7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777
(2d ed. 1986) .................................................................................... 14

Plaintiff Lorean Barrera, by her counsel Bonnett, Fairbourn, Friedman & Balint, P.C., and Siprut PC, respectfully submits this Memorandum of Law in Support of her Motion for Final Approval of the classwide settlement, and entry of a Final Judgment: (1) providing final approval of the Settlement Agreement as fair, reasonable, adequate, and in the best interests of the Class; (2) certifying for settlement purposes the Class under Rule 23; (3) appointing Plaintiff as representative of the Settlement Class; (4) appointing Elaine A. Ryan (Bonnett, Fairbourn, Friedman & Balint, P.C.) and Stewart M. Weltman (Siprut, PC) as "Lead Settlement Class Counsel," and Boodell & Domanskis, LLC, Levin Sedran & Berman, and Westerman Law Corp. as "Settlement Class Counsel"; and (5) granting such other and further relief as is stated in the proposed Final Judgment and Order (filed herewith) (including an award of attorneys' fees and costs and Plaintiff incentive award as set forth in Plaintiff's Motion filed on September 22, 2017 (D.E. 427)).[1]

## I.   INTRODUCTION

This Settlement, a by-product of arm's-length, extensive, and, at times, contentious negotiations which were overseen and directed by a respected and experienced United States Magistrate Judge, Jay Gandhi, is substantial and well-received by the Settlement Class with only one objector[2] and one opt-out.  The Settlement provides for over $1 million in cash compensation and up to $5.9 million in 17 popular products and fulfillment costs to be distributed to Settlement Class Members who submit valid claims. The claims process is simple and all Settlement Class Members who submitted valid claims will be treated fairly under the Settlement.  The Settlement also provides meaningful constraints on the labeling practices of one of the industry leaders and largest sellers of glucosamine/chondroitin products in the United States.   Specifically, Pharmavite will not use any of the following (or similar) terms on the Covered Products'

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement (D.E. 420-4).  To the extent there is any conflict between the definitions of those terms, the definitions in the Settlement Agreement will control.
[2] Truth in Advertising, Inc. ("TINA") has sought leave to file an amicus brief criticizing the Settlement but does not represent a class member.

1    labels to describe the effect of glucosamine and/or chondroitin on cartilage: "rebuild",

2    "rebuilds", "rebuilding", "renew", "renewing", "renewal", "rejuvenate", "rejuvenates",

3    "rejuvenation", or "rejuvenating".    Thus, following the implementation of this

4    Settlement, purchasers of the Covered Products will not be exposed to these

5    representations.  Not only does this benefit the marketplace by prohibiting allegedly false

6    statements to the benefit of **all** potential future purchasers, but it also benefits the

7    significant number of current Settlement Class Members who are repeat users of the

8    Covered Products.

9           That this Settlement represents an excellent recovery for the Settlement Class is

10   supported by the reaction of Settlement Class Members.  Over 98,852 Settlement Class

11   Members have submitted claims.  This number of claims compares very favorably to

12   court-approved settlements of the *Rexall* glucosamine litigation as well as the *Schiff*

13   glucosamine litigation, the fact notwithstanding that both Rexall and Schiff have larger

14   market shares for these products than Pharmavite does.[3]  Further, there has been only

15   one opt-out and one objection filed.  (*See* Ex. 1, Declaration of Phil Cooper Re: Notice

16   Procedures, at ¶¶ 9-10.)

17          As demonstrated below, the proposed Settlement is "fair, reasonable and

18   adequate," and thus warrants final approval by this Court.  *Hanlon v. Chrysler Corp.*, 150

19   F.3d 1011, 1027 (9th Cir. 1998); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

20   (9th Cir. 1992) (same).[4]

21   **II.    CLASS NOTICE, CLAIMS PROCESS, AND CLASS RESPONSE**

22          Pursuant to the Court's Preliminary Approval Order, Settlement Class Members

23   were notified of the Settlement by print and internet publications.  (*See* Cooper Decl., at

24   _____

25   [3] *See* Mahan Declaration at ¶ 5, filed in *Pearson v. Target Corp.* ("*Rexall*"), Case No. 1:11-cv-
     07972 (N.D. Ill.) (D.E. 344); Robin Declaration at ¶ 21, Case No. 3:11-cv-01056 (S.D.
26   Cal.) (D.E. 166-1).
     [4] Plaintiff incorporates by reference her full discussion of the procedural history,
27   settlement negotiations and the terms of the Settlement from her Motion for an Award
     of Attorneys' Fees and Expenses and Plaintiff Incentive Award. (D.E. 427, at Section
28   II(A)-(D).)

1  ¶¶ 6-8; *see also* Section V, below.)

2  The Notice (including the Internet impressions) directed the Class Members to the

3  settlement website, where they could file claims online via an electronic form or in

4  hardcopy through the U.S. mail.  Almost all – well over 99% of Class Members – utilized

5  the online option.  (*See* Cooper Decl. at ¶11.)  In addition to an electronic claim form, the

6  settlement website has all of the important documents posted.  (*Id.* at ¶8.)  And, Class

7  Members seeking further information could access an automated voice information

8  system maintained by the settlement administrator, KCC.  (*Id.* at ¶ 7.)

9  The reaction of the Class has been overwhelmingly positive – as only one

10  objection has been filed,[5] only one Class Member has sought to be excluded, and 98,852

11  Class Members filed claims.  The substantial number of claims not only speaks to the

12  substantial relief available but confirms the publication notices successfully reached Class

13  Members and the ease of the claims process.  The claims process was completed

14  November 13, 2017.  (*See id.* at ¶ 11.)  KCC is currently taking all actions needed to assess

15  all claims.

16  **III.  THE COURT SHOULD GRANT FINAL APPROVAL AS THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

17  The proposed Settlement is fair, reasonable and adequate and reflects the Parties'

18  careful consideration of the benefits, burdens, and risks associated with continued

19  litigation of this action.  Accordingly, Plaintiff respectfully requests that this Court grant

20  final approval of the Settlement Agreement and order the relief provided for in the

21  Settlement Agreement.

22  **A.    The Standards for Final Approval of Class Action Settlements**

23  Pursuant to Rule 23(e), after directing notice to all Settlement Class Members in a

24  reasonable manner and prior to granting final approval of a proposed settlement, the

25  Court must conduct a fairness hearing and determine whether the settlement's terms are

26

27  _____

28  [5] All objections and requests for exclusion were to be postmarked by November 13, 2017.  (*See* Cooper Decl., at ¶¶ 9-10.)

1   "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv.*

2   *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also, e.g.*, *Rodriguez v. West Publishing Corp.*,

3   563 F.3d 948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and

4   reasonable no matter how you slice it.  There is no evidence of fraud, overreaching, or

5   collusion."); *see generally*, *Manual for Complex Litigation (Fourth)* §21.62 (2004) ("Rule

6   23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); 4

7   Herbert B. Newberg, *et al.*, *Newberg On Class Actions* §11:41 (4th ed. 2002).

8       Strong judicial policy favors settlement of class actions.  *Class Plaintiffs*, 955 F.2d at

9   1276 (noting "strong judicial policy that favors settlements, particularly where complex

10  class action litigation is concerned"); *see also Churchill Village, LLC v. Gen. Elec. Co.*, 361

11  F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

12  1995).  Indeed, "voluntary conciliation and settlement are the preferred means of dispute

13  resolution."  *Officers for Justice*, 688 F.2d at 625.  Class action suits readily lend themselves

14  to compromise because of the difficulties of proof, the uncertainties of the outcome, and

15  the typical length and size of the litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

16  950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting

17  litigation.  This is particularly true in class action suits ….").

18      Several non-exhaustive factors are universally recognized as guideposts to the "fair,

19  reasonable, and adequate" determination: the strength of plaintiff's case; the risk,

20  expense, complexity, and likely duration of further litigation; the risk of maintaining class

21  action status throughout the trial; the amount achieved or recovered in resolution of the

22  action; the extent of discovery completed, and the stage of the proceedings; the

23  experience and views of counsel; and the reaction of the class members to the proposed

24  settlement.  *Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625; *Jack v.*

25  *Hartford Fire Ins. Co.*, 2011 WL 4899942, at *4 (S.D. Cal. Oct. 13, 2011) (citing *Molski v.*

26  *Gleich*, 318 F.3d 937, 954 (9th Cir. 2003), *overruled on other grounds in Dukes v. Wal Mart*

27  *Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)); *Hanlon*, 150 F.3d at 1026 (the court's task is to

28  "balance a number of factors," including "the risk, expense, complexity, and likely

duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement"). Moreover, the Court should give a presumption of fairness to arm's-length settlements reached by experienced counsel. *Rodriguez,* 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]").

The proposed Settlement satisfies these standards for final approval.[6]

## 1. The Strengths of Plaintiff's Case and Risk, Complexity, Expense, and Duration of the Litigation Favor Final Approval

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst,* 529 F.2d at 950; *U.S. v. McInnes,* 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard – the Parties and their respective experts disagree diametrically about the merits, and there is substantial uncertainty about the ultimate outcome of this litigation. While Plaintiff feels that her substantive claims are meritorious, Pharmavite contests the merits of Plaintiff's claims, and there always is a possibility that the fact finder could side with Pharmavite.

In addition to the substantial risks and uncertainty inherent in continued litigation, there is the certainty that further litigation would be expensive, complex, and time consuming for the Parties. The Court would be required to resolve the numerous issues raised by the motions that were pending when the Parties reached a settlement, as well as the multitude of pre-trial motions that the Parties would have filed in advance of – and during – trial. The trial itself would undoubtedly be time-consuming and expensive. As with most class actions, this action is complex. Indeed, to date, over 360,000 pages of

---

[6] Despite TINA's objection to the nationwide scope of this Settlement (D.E. 428-1, at 6-7), broadening the scope of the class for settlement purposes is appropriate and the proposed nationwide Settlement satisfies the standards for final approval. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2011 WL 13152270, at *9 (N.D. Cal. Aug. 24, 2011) ("courts have generally certified settlement classes broader than the previously-certified litigation classes; the claims released are typically more extensive than the claims stated").

documents have been produced.  Plaintiff has retained three experts and Pharmavite has retained seven, whose trial testimony would span multiple disciplines including epidemiology, medicine, rheumatology, microbiology, economics, statistics, scientific methodology, marketing and accounting (among others), and would likely involve reference to dozens (if not scores) of scientific authorities and studies, such that the trial of this action could extend over several weeks.  Further, as the merits are vigorously disputed by the Parties, post-trial motions and appeals would likely continue for years before Plaintiff or the Settlement Class would see recovery, if any.

The Settlement eliminates the delay and expenses which strongly weighs in favor of approval.  *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

## 2. The Substantial Relief Provided by the Settlement Agreement Favors Final Approval

Also weighing in favor of approval are the meaningful economic benefits provided to Settlement Class Members and the important labeling requirements that will benefit all future purchasers of the Covered Products, including any Settlement Class Members who might consider purchasing Defendant's products in the future.  These benefits, provided by the Settlement, constitute relief which is prompt, certain, and substantial as compared to the alternative of long, complex litigation with no certain results.

In evaluating the fairness of the consideration offered in settlement, the Court should make every effort to defer to the Settlement Agreement as it is the product of a consensual settlement reached under the oversight of a magistrate.  "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"  *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965.  The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of

compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Further, "'it is the complete package taken as whole, rather than the individual component parts, that must be examined for overall fairness.'" *Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (citations omitted).

Here, the Settlement Agreement provides real relief for the Settlement Class. There is a $1 million cash component. Settlement Class Members who elect cash compensation and who have some form of proof of purchase can obtain compensation for 100% of the average retail purchase price for up to four (4) purchases and consumers who have no such documentation can obtain compensation for approximately 50% of the average retail purchase price for up to four (4) purchases.[7] The Settlement also provides up to $5.9 million in free product and fulfillment costs to Settlement Class Members.[8] Those who elect free product may obtain 100% of their average purchase price in free product for up to six (6) purchases. Similar settlements involving both cash and free product options have been approved. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) (affirming final approval of settlement in antitrust action providing class members the option of receiving cash compensation or a gift card); *Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (final approval of settlement providing class members the option of receiving cash compensation or free

---

[7] *See* D.E. 420-4 for a full list of the Covered Products. The Covered Products range in price from approximately $15.00 to $40.00. (D.E. 32, Second Amended Complaint, ¶ 10.)
[8] The Settlement provides that if the number of valid claims received exceeds 40,000 – which is the case here – the administration costs may be scaled up on a per claim basis. Any scaled-up administration costs shall be paid by Pharmavite, with the first $25,000 of any scaled-up administration expense at Pharmavite's sole expense and any scaled-up expense in excess of $25,000 to be paid by Pharmavite but reducing the $5.9 million product benefit by an equal amount. To date, KCC's costs are $336,690, and although there will be unknown additional costs incurred, KCC does not anticipate such costs will be significant. (*See* Cooper Decl. at ¶ 14.) Thus, Plaintiff anticipates all (or nearly all) the $5.9 million in product benefits will be available to Settlement Class Members.

car rental days).

Further, the Settlement Agreement provides injunctive relief on labeling (*i.e.*, Pharmavite will be precluded from describing the effect of glucosamine and/or chondroitin on cartilage using any of the following (or similar) terms: "rebuild", "rebuilds", "rebuilding", "renew", "renewing", "renewal", "rejuvenate", "rejuvenates", "rejuvenation", or "rejuvenating"), benefiting Settlement Class Members in their future purchases as well as future new purchasers. Because consumer protection is the touchstone of all consumer fraud laws, the injunctive relief provided in the Settlement Agreement is a meaningful benefit. *See, e.g., Asghari v. Volkswagen Grp. Of Am., Inc.*, 42 F. Supp. 3d 1306, 1314 (C.D. Cal. 2013) ("The CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'") (citations omitted); *Kwikset Corp. v. Sup. Ct.,* 51 Cal. 4th 310, 344 (2011) (California's UCL's "purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services'" and "[i]n service of that purpose, the Legislature framed the UCL's substantive provisions in 'broad, sweeping language'") (citations omitted).

Thus, the Settlement provides real relief to the Class favoring approval.

### 3. The Stage of the Proceedings, Experience and Views of Counsel Favor Final Approval

Also favoring approval is that the Settlement reflects the well-informed analyses of the Parties. This litigation has been pending for over six years. During this time, the Parties have engaged in substantial formal and informal discovery necessary to facilitate and evaluate the strengths and weaknesses of the case. Pharmavite has produced over 360,000 pages of documents responsive to Plaintiff's document requests, over a dozen expert reports have been exchanged, competing motions for summary judgment were filed and denied, and the case was on the eve of trial. *Wietzke v. CoStar Realty Info., Inc.*, 2011 WL 817438, at *5 (S.D. Cal. Mar. 2, 2011) ("Generally, a settlement that occurs in

more advanced stages of proceedings, such as after discovery has occurred, suggests the parties have a better understanding of the strengths and weaknesses of their case."). As a result of these efforts, Plaintiff's Counsel was able to fully analyze the strengths and weaknesses of the case. *See, e.g.*, *Mendoza*, 2017 WL 342059, at *7 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions and participated in mediation); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (same).

Accordingly, the Parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed Settlement to the risks of further litigation. Based on this comparison, Settlement Class Counsel, who have substantial experience in litigating class actions, determined that the proposed Settlement was in the best interest of the Settlement Class. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Mendoza*, 2017 WL 342059, at *7. *See also In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014 WL 6473044, at *7 (S.D. Cal. Nov. 18, 2014) ("Class Counsel are experienced class action litigators and believe that the Settlement represents an excellent recovery for the Class. Accordingly, these factors favor final approval of the settlement as well."); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1099 (C.D. Cal. 2011) ("The experience and views of counsel further support a finding that the Settlement is fair.").

### 4. The Settlement Was Reached After An Arm's Length Mediation Session Conducted Before a Neutral Mediator (Magistrate Judge Jay C. Gandhi), and Numerous Subsequent Negotiations Conducted With His Guidance

The experience of Class Counsel[9] and Pharmavite's Counsel as longstanding class action attorneys, the substantial involvement and assistance of a highly-qualified mediator, the six years of discovery and motion practice allowing for an informed

---

[9] Counsel for Plaintiff are experienced complex class action and consumer fraud litigation firms, as demonstrated in the firm biographies of Settlement Class Counsel at D.E. 427-3, 427-4 and 427-5.

risk/benefit analysis, the ten months of back-and-forth negotiations, and the fair result reached, all confirm that the negotiations that led to the Settlement were arm's length, not collusive.  *See* Newberg, at §11.41 ("The initial presumption of fairness of a class settlement may be established by showing: (1) that the settlement has been arrived at by arm's length bargaining; (2) that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) that the proponents of the settlement are counsel experienced in similar litigation.); *see also White,* 803 F. Supp. 2d at 1099; *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length…. [and] (3) the proponents of the settlement are experienced in similar litigation. . . ."); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (N.D. Fla. 2011); *Manual for Complex Litigation* (Third) § 30.42 (1995).

Counsel for Plaintiff and the Settlement Class and Pharmavite each zealously negotiated on behalf of their clients' best interests.  At the inception of the settlement discussions, occurring after over five years of hard-fought litigation, Plaintiff's Counsel, who are experienced in prosecuting complex class action claims, had "a clear view of the strengths and weaknesses" of their case and were in a position to make an informed decision regarding the reasonableness of a potential settlement.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489-90 (E.D. Cal. 2010).  The Parties engaged the Hon. Jay C. Gandhi, Magistrate Judge, an experienced and skilled mediator, to facilitate the negotiations. Following written briefs submitted to Magistrate Judge Gandhi, the Parties and their counsel participated in an initial all-day mediation session with Magistrate Judge Gandhi, followed by a ten-month exchange of dozens of emails, texts, and phone calls, many of which involved Magistrate Judge Gandhi, before a settlement in principle was reached. Fees and expenses were not negotiated until the substantive provisions of monetary, free product, and injunctive relief were finalized.  There is not even a hint of collusion in the

extended course of these settlement negotiations.  And, the fact that a highly regarded and experienced magistrate/mediator was heavily involved in the settlement negotiations further demonstrates the settlement was anything but collusive.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner.").

The arm's length negotiations continued even after a settlement in principle was reached as the Parties began the painstaking process of negotiating the language of the Settlement Agreement and its many details.  The Parties negotiated each and every detail of the Settlement Agreement and each of its exhibits, including additional negotiations which resulted in revisions following an inquiry by the Court regarding distribution of any unclaimed Settlement benefits.  The significant monetary and non-monetary recovery obtained was achieved through the effective advocacy of Settlement Class Counsel, who negotiated the Settlement with the same vigor as they litigated the action against highly skilled defense counsel.

The Settlement Agreement strikes a compromise that affords fair recompense to Settlement Class Members who submit a claim by providing the option of monetary or free product relief after submitting online (or by mail) a simplified claim form and nothing else, and meaningful injunctive relief to all Settlement Class Members who are repeat buyers of the Covered Products – even those who submit no claim.

Further, Plaintiff does not receive any unduly preferential treatment under the Settlement.  With the exception of an award of about $1,700/year for her six years of service as a class representative – $10,000 to account for her willingness to step forward and represent other consumers and to compensate her for her time in sitting through an all-day deposition, attending an all-day mediation and other efforts devoted to prosecuting the common claims over six years – Plaintiff is treated the same as every other Settlement Class Member.  Such service awards are "fairly typical in class actions." *Rodriguez,* 563 F.3d at 958; *see also* D.E. 427-1, at Section V.

**5.    The Reaction of the Settlement Class Members Favors Final
Approval**

Courts recognize that a favorable reaction by class members to the proposed
settlement strongly supports final approval. *See Chun-Hoon,* 716 F. Supp. 2d at 852 ("The
reaction of class members to the proposed settlement, or perhaps more accurately the
absence of a negative reaction, strongly supports settlement."). Class members must be
allowed the opportunity to review and object to both the settlement and plaintiff's
application for attorneys' fees prior to final approval. *See In re Mercury Interactive Corp. Sec.
Litig.,* 618 F.3d 988, 993-94 (9th Cir. 2010). If, after having a full opportunity to object to
all aspects of a settlement, no class members objected to or opted-out of the settlement,
then that is an important factor in evaluating the fairness of the settlement. *See, e.g.,
Mendoza,* 2017 WL 342059, at *8 (finding "the high claim rate and low opt-out [0.17%]
and objection rates" "strongly favors final approval"); *Ozga v. U.S. Remodelers, Inc.,* 2010
WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (in granting final approval of a settlement
class, court considered that the "overall reaction to the Settlement has been positive,"
there were no objections to the Settlement and "[n]o Class Member appeared at the final
approval hearing to object"); *Williams v. Costco Wholesale Corp.,* 2010 WL 2721452, at *5
(S.D. Cal. July 7, 2010) (holding that "reaction of the class members weighs in favor of
granting final approval" where "not one class member has filed an objection or a request
for exclusion") (citing *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164,
175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be
viewed as indicative of the adequacy of the settlement.")).

The reaction of Settlement Class Members is overwhelmingly positive. There have
been over 98,852 claims submitted and only one objection to the Settlement and just one
request for exclusion. (*See* Cooper Decl. at ¶ 11.) *See also, e.g., Churchill Village, LLC,* 361
F.3d at 577 (affirming approval of a class action settlement where forty-five objections
were received out of 90,000 notices); *Gallucci v. Boiron, Inc.,* 2012 WL 5359485, at *7 (S.D.
Cal. Oct. 31, 2012) ("The response of the Class to this action...strongly favors final

approval of the Settlement.  Out of the estimated millions who received Notice [] only two class members submitted valid requests for exclusion.   Moreover, only three Objections were filed."); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) (no objections and less than 1% of the class electing to opt out weighed in favor of final approval and the adequacy of the amount offered in settlement); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

       There was only one objection, by the law firm of Tucker Pollard on behalf of Justin Ference.[10]  An objector with the same "Ference" surname has retained this same law firm to object to at least one other settlement and the law firm appears to be part of the cottage industry of what are known as professional objectors, having objected to several other settlements – often dropping its objections during the appeals process.  *See, e.g., Keller v. NCAA*, No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS113474 (N.D. Cal. Aug. 18, 2015); *In re Ameer Hashw* No. 16-2506, 2016 WL 4009798 (8th Cir. July 22, 2016) (appeal dropped on 9/16/16); *In re Groupon Marketing & Sales Practices Litig.*, No. 16-55615, 2016 WL 6566416 (9th Cir. Nov 2, 2016) (appeal dropped); *In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Products Liab. Litig.*, 2017 WL 1047763 (9th Cir. March 17, 2017); *Hendricks v. Ference (objector) v. Starkist Co.*, 2017 WL 1338054 (9th Cir. April 7, 2017); *Russell v. Card (objector) v. Kohl's*, No. 16-56493, 2017 WL 1521284 (9th Cir. April 19, 2017); *Big 5 Sporting Goods Song-Beverly Cases*, JCCP No. 4667 (Cal. Super. Ct. Los Angeles Cnty.).  Further, Carolyn Tucker (objector Ference's attorney), has even appeared as an

---

[10]  Interestingly, Mr. Ference submitted a claim on September 14, 2017 seeking to participate in the Settlement he is objecting to.  Declaration of Patricia N. Syverson (filed herewith) at ¶ 2.

objector herself.[11]   In *Keller v. NCAA*, Judge Wilken of the Northern District of California required Tucker to post a $5,000 appellate cost bond, noting that a bond was appropriate because Tucker's objection was "meritless" and "not likely to succeed." 2015 U.S. Dist. LEXIS143391, at *24 (N.D. Cal. Oct. 21, 2015).  Notably, absent is the usual cast of professional objectors who routinely object to numerous settlements to possibly gain some financial rewards.  That they did not object to this Settlement speaks to its soundness and the requested fee and costs.

TINA has sought leave to file an amicus brief setting forth criticisms of the settlement.  Because TINA does not represent a Class member, it lacks standing to voice any opinion on the Settlement.  *See, e.g.*, *Lozano v. AT&T Wireless Services, Inc.,* 2010 WL 11515433 (C.D. Cal. Nov. 22, 2010) (holding that "objectors Kwaku Kushindana, James Coffin, and Sally Coffin are not members of the Lozano Settlement Class and, thus, lack standing to object to the Lozano Settlement");  *see also generally* Pharmavite LLC's Opposition to the Motion of Truth in Advertising, Inc. for Leave to Submit an *Amicus Curiae* Brief in Opposition to the Proposed Settlement ("Defendant's Opposition to TINA").[12]   Nevertheless, Plaintiff will address all of the points raised by the single objector as well as TINA.

The very few objections or criticisms asserted either are mooted by the number of claims made or otherwise lack merit.  When properly considered as a whole, the Settlement is fair, reasonable, and adequate for the above stated reasons such that the objections lack merit, as addressed immediately below:

### a.  The Injunctive Relief Provided by the Settlement is Meaningful

The injunctive relief provided by this Settlement is neither "inadequate" nor "illusory." (D.E. 428-1, at 7-8.)   Rather, it imposes meaningful labeling constraints on an

---

[11] *See Hashw v. Dept. Stores Nat'l. Bank*, No. 0:13cv727 (D. Minn) (appearing as an objector).

[12] While TINA is not entitled to object and their motion seeking leave for them to file an amicus brief should be denied (*see generally* Defendant's Opposition to TINA), the points TINA raises will be addressed below.

industry leader and one of the largest sellers of glucosamine/chondroitin products in the United States.  *See* Section III.A.2., above.   In criticizing the scope ("two words" banned) and duration (24 months) of the injunctive relief, the single biggest point both Objector Ference and TINA miss is this: absent some material change in scientific substantiation, regardless of the duration of the injunction, Pharmavite is unlikely to introduce the 10 specifically prohibited terms or similar terms, as that would invite another lawsuit. This lawsuit, the expense of the Settlement, and the injunctive relief in combination provide a significant prophylactic benefit to repeat buyers of the Covered Products who are in the Settlement Class.  All economic factors considered, the injunctive relief criticisms of Objector Ference and TINA do not undermine the fairness or adequacy of the Settlement.

Both Objector Ference and TINA criticize the injunctive relief as it provides only a partial and not full injunction.  (D.E. 429, at 2-3; D.E. 428-1, at 7-12.)  Significantly, TINA raised this same objection which was rejected in regard to the Perrigo and Schiff settlements, which provided for similar labeling changes on glucosamine product labels. In *Lerma v. Schiff Nutrition Int'l, Inc.,* 2015 WL 11216701, at *7 (S.D. Cal. Nov. 3, 2015) ("Schiff"), after considering TINA's objections, the court found "the injunctive relief provided in the Settlement is more beneficial to the Class than the possibility of injunctive relief after prolonged and risky litigation. Accordingly, the limited injunctive relief is fair, adequate and reasonable in this instance."  Here there was ***no*** possibility of injunctive relief at trial given that claim had been dismissed (D.E. 192, at 26) – a point which both Objector Ference and TINA completely ignore.  And, even if it were available, this is a settlement and a compromise, not a trial victory.  *Hanlon,* 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

In truth, the injunction is much broader than either TINA or Objector Ference acknowledge as the Settlement Agreement provides Pharmavite will be precluded from

describing the effect of glucosamine and/or chondroitin on cartilage using any of the following (or similar) terms: "rebuild", "rebuilds", "rebuilding", "renew", "renewing", "renewal", "rejuvenate", "rejuvenates", "rejuvenation", or "rejuvenating." And, although TINA points to a provision in the *Schiff* agreement permitting the word "renew" and then uses that to argue Pharmavite is not precluded from using "renew" here (D.E. 428-1, at n. 3), the likelihood of this speculative possibility is slim given Pharmavite's litigation exposure.

Further, in criticizing the 24-month duration of the injunction (D.E. 429, at 3; D.E. 428-1, at 10),[13] neither Objector Ference nor TINA acknowledge that absent a material change in scientific substantiation – meaning "an independent, well-conducted, published clinical trial substantiating that the Covered Products rebuild, renew, or rejuvenate (or a variation of those statements) cartilage," – Pharmavite is unlikely to use the prohibited terms as that would invite another lawsuit.

b.    **The Value of the Relief Provided to the Class Is Sufficient**

As to the other benefits provided, Objector Ference contends that the cash relief is not sufficient, but ignores the substantial free product benefits that have been roundly accepted by the Class.  "It is the complete package taken as whole, rather than the individual component parts, that must be examined for overall fairness." *Mendoza,* 2017 WL 342059, at *6 (citations omitted).

More specifically, Objector Ference objects to, and TINA criticizes, the cash relief being capped at 4 products even if a Class member has proof they purchased additional products.  (D.E. 429, at 3; D.E. 428-1, at 12.)   However, in *Schiff*, the court approved a settlement with a similar 5 glucosamine product cap, finding that "district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be

---

[13] TINA argues that based on the terms of the Settlement Agreement and the inclusion of provisions from the Schiff settlement, in actuality, the injunctive relief period here expires in November 2018 – less than a full 24 months.  (D.E. 428-1, at 11.)  As discussed above, the supposed consequences of that are speculative, and do not in any way undermine the fairness or adequacy of the Settlement.

1   fair and reasonable, especially when taking into account the uncertainties involved with

2   litigation." 2015 WL 11216701, at *5 (S.D. Cal. Nov. 3, 2015) (citing *In re Mego Fin. Corp.*

3   *Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000)).

4          And, TINA comments that the value of the Product Award is "inflated as it

5   includes the cost of shipping and handling of the products," and the products have "been

6   ascribed their retail value." (D.E. 428-1, at 13.) However, the free product is properly

7   valued at retail price, inclusive of shipping and handling costs as that is the amount

8   consumers would have to pay to buy the products and have them delivered. *See, e.g.*, *In re*

9   *Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *9 (N.D. Cal. Jan. 30, 2015)

10  (granting final approval of settlement providing replacement adapter in kind relief and

11  rejecting objection to use of the "retail value" to value the in-kind relief finding "the $79

12  retail value assigned to each replacement adapter is appropriate because that is the value

13  to the class member–the class member would have paid the $79 if the Adapter

14  Replacement Program did not exist"); *In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741,

15  746 (7th Cir. 2011) (affirming use of "retail value" to value in-kind relief, noting the "fact

16  that the amount of cash that a class member can expect to receive is likely to be small

17  makes the in-kind option very attractive").[14]

18         c.    **The *Cy Pres* Provisions of the Settlement Have Been Mooted as the Fund will be Claimed in Full**

19         Both Objector Ference and TINA criticize the Settlement for the inclusion of a *cy*

20  *pres* provision as well as the named potential *cy pres* recipients. (D.E. 429, at 3-4; D.E.

21  428-1, at 15-16.) Both the cash and free product made available by the Settlement have

22  been fully claimed, mooting *cy pres* objections.

23

24  _____

25  [14] *See also O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003) ("[t]he settlement fund should be based on the benefit to the class and not the cost to the

26  defendant"); *In re Toys R Us Antitrust Litig.,* 191 F.R.D. 347, 352 (E.D.N.Y. 2000) (product fund valuation based on MSRP or average retail price); *In re Prudential Ins. Co. of*

27  *Am. Sales Practices Litig.,* 962 F. Supp. 450, 557 (D.N.J. 1997) ("The cost of the relief to [defendant] is not the measure of class member benefit. The value of the relief to the

28  Class, which may be substantial, is what matters.").

### d.   Settlement Class Counsel's Attorneys' Fees and Cost Request Is Reasonable

TINA contends that Settlement Class Counsel's fee request is unreasonable because it is "three times larger than the cash available to the proposed nationwide class." (D.E. 428-1, at 6.)  The law is well settled that fees are to be awarded in relation to the total benefit provided to the class which here includes the $1M cash, the $5.9M free product, the $325,000 notice and administration costs, and the $4.075M attorneys' fees and costs, as well as injunctive relief.[15]  *See, e.g., Weeks v. Kellogg Co.,* 2013 WL 6531177, at *7 (C.D. Cal. Nov. 23, 2013) ("post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class"); *Lopez v. Youngblood*, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 1, 2011) (amount of fund takes into account attorneys' fees and class administration costs).  As properly valued, the $3.475M requested fee represents less than 31% of the $11,300,000 settlement benefit package not including the injunctive relief obtained.  As set forth in Plaintiff's fee motion, the requested fee is well within the range found acceptable in the Ninth Circuit and represents only 78% of Settlement Class Counsel's actual lodestar.  Indeed, the Ninth Circuit affirmed an award of fees greatly in excess of the value of the settlement comprised principally of injunctive relief no more robust than the injunctive relief here.  *In re Ferrero Litig.,* 2012 WL 2802051 (S.D. Cal. July 9, 2012), *aff'd in unpublished decision*, 583 Fed.Appx. 665 (9th Cir. 2014).

Objector Ference's objection that the requested fees are "outrageously high" compared to the amount claimed, is based on the premature and wholly wrong premise that the product benefits would go largely unclaimed (D.E. 429, at 5), when, in fact, they have been claimed in full.  Further, while not necessary here because the entire fund has been claimed, under controlling law fee awards are to be based on the value of the settlement fund made available, not the amount actually claimed.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480-81 (1980); *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026,

---

[15] This amounts to a total of $11,300,000 being provided as a result of the Settlement, absent any dollar value assigned to the injunctive relief.

1027 (9th Cir. 1997) (the amount of the benefit conferred is measured by the total recovery available for the settlement class, not the amount actually claimed by class members); *Lopez*, 2011 WL 10483569, at *12 (finding "it is appropriate to award class fund attorneys' fee based on the gross settlement fund") (citing cases); *Shames,* 2012 WL 5392159, at *12 ("the Court is not *required* to compare requested attorneys' fees against the actual settlement payouts") (emphasis original).  While Objector Ference argues fees should not exceed 25% of the fund, for all the reasons set forth in Plaintiff's fee motion, the requested fee award is appropriate in light of the time, effort and specific circumstances of this case, of which Objector Ference lacks familiarity.  And this is particularly so, as Plaintiff's counsel fought off summary judgment and a decertification motion, and if the full requested amount is awarded Plaintiff's counsel will still experience a negative multiplier.

Finally, Objector Ference complains that Plaintiff's fee motion was "not [] posted on the class website." (D.E. 429, at 5-6.)  There is no such requirement, as FRCP 23(h)(1) provides that motions for attorneys' fees must be "directed to class members *in a reasonable manner*." (emphasis added).  *See also In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *15 (N.D. Cal. Sept. 2, 2015) (overruling 23(h) objection that motions for attorneys' fees were not posted on the lawsuit's website finding that public filing on the case's docket was sufficient); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *2 (N.D. Cal. Dec. 27, 2011) ("[One court's] preference that the fee petition be posted on the website … does not compel other courts to require the same to fulfill due process."); *see also Lerma v. Schiff Nutrition Int'l Inc.*, 2015 WL 11216701, at fn.1 (S.D. Cal. Nov. 3, 2015) (finally approving settlement and overruling objection that fee award should be reduced because the "Class Counsel's motion for fees and costs was available only through the public record and not on the Class website" finding that the "fee motion was sufficiently accessible to the Class").  And, while Objector Ference claims Class members did not have sufficient time to file objections, Plaintiff and Settlement Class Counsel timely filed the fee motion on September 22, 2017, more than seven weeks

1   in advance of the deadline for objections.  Thus, any objector or their counsel could have

2   readily obtained a copy of the fee motion with more than sufficient time to review and

3   object if they so desired.

4          For all these reasons, any objections to Plaintiff's fee and cost request are wholly

5   without merit.

6          **e.   Plaintiff's Incentive Award Request is Reasonable**

7          Without so much as one supporting authority, Objector Ference claims Plaintiff

8   should not be awarded more than $2,500 in incentive compensation.  (D.E. 429, at 5.)

9   The requested $10,000 incentive award is reasonable as Plaintiff has actively participated

10  in this case for over five years by, among other efforts, reviewing relevant pleadings,

11  producing relevant documents, keeping in constant communication with her counsel,

12  sitting for a 4.5-hour deposition and attending the all-day mediation before Magistrate

13  Judge Gandhi.  (D.E. 427-1, at 23 (citing Ex. A, Ryan Final Approval Decl., at ¶ 24; Ex.

14  B, Weltman Final Approval Decl., at ¶ 22) and 24.)  *See also, e.g.*, *In re: Easysaver Rewards*

15  *Litig.,* 2016 WL 419048, at *5 (S.D. Cal. Aug. 9, 2016) (approving $10,000 and $15,000

16  incentive awards where plaintiffs were actively involved, including being deposed, subject

17  to written discovery, and traveling to attend mandatory settlement conference); *Wilson v.*

18  *Gateway, Inc.*, 2014 WL 12704846, at *7 (C.D. Cal. Oct. 6, 2014) (approving $10,000

19  incentive award, stating that: "Courts in the Ninth Circuit have granted service awards in

20  varying amounts up to and past $10,000."); *Navarro v. Servisair*, 2010 WL 1729538, at *4

21  (N.D. Cal. Apr. 27, 2010) (court approved $10,000 incentive award as reasonable based

22  on plaintiff's "active participation").

23         In sum, the Settlement is the product of extensive negotiations among the Parties,

24  fully informed of the strengths and weaknesses of their claims and defenses.  It is fair,

25  adequate and reasonable, and warrants final approval under Rule 23(e).

26  **IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

27         Prior to the Settlement, the Court certified the California classes.  (D.E. 192.)  By

28  Order dated June 5, 2017 (D.E. 423), the Court granted preliminary approval of a

1   nationwide Settlement Class.  As the proposed Settlement Class meets each of the
2   applicable requirements of Rules 23(a) and (b)(3), certification is appropriate.

3       **A.   The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)**
4               **1.   Numerosity**

5       Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is
6   impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D.
7   Cal. 2009).   The numerosity requirement is readily met where it is difficult or
8   inconvenient to join all members of the proposed Settlement Class.  *See id.* at 664;
9   *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883, at *4 (C.D. Cal. July 16, 2009) (citing
10  *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459
11  U.S. 810 (1982)); *Reynoso v. S. Cty. Concepts*, 2007 WL 4592119, at *2 (C.D. Cal. Oct. 15,
12  2007) ("The sheer number of potential class members justifies the Court's finding that
13  the class in this case meets the numerosity requirement.").

14      Pharmavite has sold millions of the Covered Products nationwide during the Class
15  Period.  (D.E. 241-3 (Expert Report of Joseph J. Gardemal III), at ¶ 25.)  Further, as the
16  Parties have stipulated to numerosity, this Court found numerosity satisfied as to the
17  California classes.  (D.E. 192, at 15.)  It necessarily follows then, that the even larger
18  nationwide Settlement Class satisfies the numerosity requirement.

19              **2.   Commonality**

20      "Commonality requires the plaintiff to demonstrate that the class members have
21  suffered the same injury . . . Their claims must depend upon a common contention . . .
22  That common contention, moreover, must be of such a nature that it is capable of class-
23  wide resolution – which means that determination of its truth or falsity will resolve an
24  issue that is central to the validity of each one of the claims in one stroke."  *Walmart*
25  *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Still, "[t]he existence of shared legal
26  issues with divergent factual predicates is sufficient [to satisfy commonality], as is a
27  common core of salient facts coupled with disparate legal remedies within the class."
28  *Hanlon*, 150 F.3d at 1019; *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th

1    Cir. 2006).  The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d

2    at 1019; *Wiener*, 255 F.R.D. at 664.

3          This prerequisite is readily met with respect to the Settlement Class.  To quote

4    *Wiener*: "The proposed class members clearly share common legal issues regarding

5    [Defendant's] alleged deception and misrepresentations in its advertising and promotion

6    of the Products."  255 F.R.D. at 664-65; *see also Johnson v. General Mills, Inc.*, 275 F.R.D.

7    282, 287 (C.D. Cal. 2011) (plaintiff's claims presented common, core issues of law and

8    fact, including "whether General Mills communicated a representation [] that YoPlus

9    promoted digestive health" and "whether YoPlus does confer a digestive health benefit

10   that ordinary yogurt does not"); *Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469 at *3 (C.D.

11   Cal. Aug. 26, 2010) ("Since Plaintiff's claims and the proposed class are based on the

12   same misleading label on the boxes of popcorn, the Court finds that Plaintiff has

13   sufficiently demonstrated commonality pursuant to Rule 23(a)(2).").  Here, as well, the

14   core issue for each Settlement Class Member's claim is whether the Covered Products

15   provide the benefits stated on the labeling.  (D.E. 32, Second Amended Complaint, ¶¶

16   25-45; *see also* D.E. 413-12 (exemplar collection of packaging and labeling for the

17   Products); D.E. 413-13 (Report of Thomas J. Schnitzer MD, PhD).)

18         Further, as discussed by this Court in certifying the California classes, there are

19   many common factual and legal issues, including: "(1) whether TripleFlex actually

20   provides joint health benefits and (2) whether TripleFlex's representations about joint

21   health benefits are likely to deceive a reasonable consumer." (D.E. 192, at 17.) Thus, the

22   commonality requirement is satisfied.

23         **3.    Typicality**

24         Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably co-

25   extensive" with absent class members' claims; they need not be "substantially identical."

26   *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665.  The test for typicality "is

27   whether other members have the same or similar injury, whether the action is based on

28   conduct which is not unique to the named Plaintiffs, and whether other class members

1   have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d
2   497, 508 (9th Cir. 1992).

3       In certifying the California classes, this Court found Plaintiff has satisfied the
4   typicality requirement because: "the claims of plaintiff and the class are tied to the same
5   legal theory—namely, that Pharmavite misrepresented the joint health benefits of
6   TripleFlex in violation of state consumer protection laws.  In light of this, the Court finds
7   that plaintiff's claims are 'reasonably coextensive' with those of the class." (D.E. 192, at
8   21.) This finding is equally applicable to a nationwide class.  Accordingly, Plaintiff's
9   claims are typical of those of the Settlement Class Members.

10       **4.**    **Adequacy of Representation**

11       Rule 23(a)(4) requires that "the representative parties will fairly and adequately
12   protect the interests of the class."  In the Ninth Circuit, adequacy is satisfied where: (i)
13   counsel for the class is qualified and competent to vigorously prosecute the action; and
14   (ii) the interests of the proposed class representatives are not antagonistic to the interests
15   of the class.  *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d
16   at 1020; *Molski*, 318 F.3d at 955; *Wiener*, 255 F.R.D. at 667.

17       The adequacy requirement is met with respect to the Settlement Class.  First, the
18   interests of Plaintiff and members of the Settlement Class are fully aligned and conflict
19   free:  Plaintiff and members of the Settlement Class are seeking redress from what is
20   essentially the same alleged injury and there are no disabling conflicts of interest.  Second,
21   Class Counsel for the Settlement Class are qualified and experienced in class action
22   litigation, and meet the requirements of Fed. R. Civ. P. 23(g) (*see* D.E. 427-3, 427-4 and
23   427-5 (firm resumes)) and, in fact, the Court previously found this to be the case when it
24   appointed counsel class counsel in connection with the Court's certification of the
25   California only classes.  (D.E. 192, at 40-41.)  Through qualified Class Counsel, Plaintiff
26   has performed extensive work including: identifying and investigating potential claims in
27   this action; establishing the factual basis for the claims sufficient to prepare a detailed
28   class action complaint; pursuing and reviewing document discovery; identifying and

engaging experts and submitting expert reports; engaging in extensive deposition discovery and motion practice; obtaining certification of California Classes; defeating Pharmavite's summary judgment motion, motion to decertify, and *Daubert* motions; and successfully mediating and negotiating the proposed settlement. *See In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself").

**B.   The Settlement Class Should Be Certified Under Federal Rule of Civil Procedure 23(b)(3)**

Plaintiff seeks certification of a Settlement Class under Rule 23(b)(3).  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action."  *Hanlon*, 150 F.3d at 1022 (*quoting* 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777 (2d ed. 1986)).  There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. As such, Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citations omitted); *Wiener*, 255 F.R.D. at 668.

**1.   Common Questions Predominate Over Individual Issues**

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623; *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011).  "Predominance is a test

1    readily met in certain cases alleging consumer . . . fraud . . . ." *Amchem*, 521 U.S. at 623.
2    "When common questions present a significant aspect of the case and they can be
3    resolved for all members of the class in a single adjudication, there is clear justification
4    for handling the dispute on a representative rather than on an individual basis." *Hanlon*,
5    150 F.3d at 1022 (citation omitted). As such, "[w]hen one or more of the central issues
6    in the action are common to the class and can be said to predominate, the action will be
7    considered proper…" *Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007)
8    (internal citation omitted; alteration in original); *see also Wiener*, 255 F.R.D. at 668.

9         The predominance requirement is satisfied with respect to the Settlement Class.
10   As discussed above, Plaintiff alleges that the Settlement Class is entitled to the same legal
11   remedies premised on the same alleged wrongdoing. Plaintiff alleges that all of the
12   packaging conveys the same message regarding the benefits of the Covered Products.
13   (*See* D.E. 413-12 (exemplars of the Covered Products' labeling).) Thus, the central issues
14   for every person in the Settlement Class are whether Pharmavite's claims that the
15   Covered Products provided the benefits stated on the labels were false or deceptive and
16   whether Pharmavite's alleged misrepresentations were likely to deceive a reasonable
17   consumer. *See Johns v. Bayer Corp.,* 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("the
18   predominating common issues include whether Bayer misrepresented that the Men's
19   Vitamins 'support prostate health' and whether the misrepresentations were likely to
20   deceive a reasonable consumer"). With respect to the Settlement Class, these issues
21   predominate and are together the "heart of the litigation" because they would be decided
22   in every trial brought by individual members of the Settlement Class and can be proven
23   or disproven with the same class-wide evidence.

24        Indeed, the Court already determined that common issues predominated in
25   certifying the California classes: "The Court finds that common questions predominate
26   with regard to the California-only classes. … [W]hether Pharmavite misrepresented that
27   TripleFlex improves joint 'comfort, mobility, and flexibility' will be determined through
28   the presentation of expert, scientific testimony. … Second … common questions will

1  predominate regarding whether these misrepresentations are likely to deceive a

2  reasonable consumer. … Similarly, common issues predominate regarding reliance and

3  causation because none of the California consumer protection statutes requires

4  individualized proof of these elements."  (D.E. 192, at 28-29.)

5      There is no reason to depart from the Court's finding with respect to the

6  Settlement Class.  *Hartless*, 273 F.R.D. at 638-39 (predominance established where all

7  class members were exposed to the same alleged misrepresentations); *Wiener*, 255 F.R.D.

8  at 669 (predominance satisfied when alleged misrepresentation of product's health

9  benefits were displayed on every package).

10      **2.     A Class Action Is The Superior Method to Settle This Controversy**

11

12      Rule 23(b)(3) sets forth the relevant factors for determining whether a class action

13  is superior to other available methods for the fair and efficient adjudication of the

14  controversy.  These factors include: (i) the interest of members of the Settlement Class in

15  individually controlling separate actions; (ii) the extent and nature of any litigation

16  concerning the controversy already begun by or against members of the Settlement Class;

17  (iii) the desirability or undesirability of concentrating the litigation of the claims in the

18  particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P.

19  23(b)(3); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

20  "[C]onsideration of these factors requires the court to focus on the efficiency and

21  economy elements of the class action so that cases allowed under subdivision (b)(3) are

22  those that can be adjudicated most profitably on a representative basis."  *Zinser*, 253 F.3d

23  at 1190 (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th

24  Cir. 1996) (finding the superiority requirement satisfied where granting class certification

25  "will reduce litigation costs and promote greater efficiency").

26      Application of the Rule 23(b)(3) "superiority" factors show that a class action is

27  the preferred procedure for this Settlement.  The damages at issue for each member of

28  the Settlement Class are not large, averaging $15-40 per purchase.  *Zinser*, 253 F.3d at

1191; *Wiener* 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for members of the Settlement Class to pursue their claims against Pharmavite on an individual basis. *Hanlon*, 150 F.3d at 1023; *see also Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"); *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971). Additionally, the Settlement eliminates any potential difficulties in managing the trial of this action as a class action. *See Amchem*, 521 U.S. at 620 (when "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). As such, a class action is clearly superior to any other mechanism for adjudicating the claims of the Settlement Class and, thus, the requirements of Rule 23(b)(3) are satisfied.

## V. NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS

The Notice provided to the Settlement Class was adequate and satisfies Rule 23 and all other due process requirements. Rule 23 requires that "the court . . . direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While direct notice is not required, the notice must be reasonably calculated to apprise the Settlement Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Further, notice must be provided "in a manner that does not systematically leave any group without notice." *Mendoza*, 2017 WL 342059, at *5 (citations omitted).

The Notice Program provided under the Settlement – and preliminarily approved as to form and manner by this Court (D.E. 423 at 4) – was reasonably calculated to apprise Settlement Class Members of the pendency of the Action and their right to object

1   or exclude themselves from the Settlement.  (D.E. 413-2, Exs. 1-G and 1-H.)  The Notice

2   Plan was designed by Daniel Rosenthal, Special Consultant to KCC[16] (the court-

3   approved, third-party, Settlement Administrator), who has more than 30 years of class

4   action notice and administration experience.  (D.E. 420-10, Rosenthal Decl. at ¶¶ 1, 3-4.)

5   Based upon Mr. Rosenthal's analysis of publications likely to reach the proposed

6   Settlement Class, two national print publications (Arthritis Today and People) were

7   chosen.  (Id. at ¶¶ 11-12.)  Further, to fulfill the notice requirements set forth in

8   California's Consumer Legal Remedies Act, notice was also published once a week for

9   four consecutive weeks in the LA Daily News.  (Id. at ¶ 14.)  And, KCC caused

10  approximately 130 million internet impressions targeting adults aged 35+ to be

11  distributed over a variety of websites.  (Id. at ¶ 13.)   Of those 130 million internet

12  impressions, 120 million impressions targeted adults 35+ at a 1x frequency gap; 5 million

13  impressions targeted adults 35+ who have shown an interest in health as well as those

14  who have searched for the keywords "joint pain" and "glucosamine"; and 5 million

15  impressions targeted adult Facebook users aged 35+ who are categorized as anticipated

16  purchasers of vitamins, pain relief, or health and wellness products.  (Id. at Ex. 1 (D.E.

17  420-10, at 9013).)  As a whole, the Notice Plan was designed to have an anticipated reach

18  of close to 75% of the Settlement Class Members.  (See generally, D.E. 420-10.)   As

19  detailed in the concurrently filed Declaration of Phil Cooper, the Class Notice Program

20  was executed as previously detailed, and met all reach and frequency estimates.  The

21  number of claims made confirms the notice reached its intended audience.

22       In this Circuit, it has long been the case that a notice of settlement will be adjudged

23  "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to

24  alert those with adverse viewpoints to investigate and to come forward and be heard.'"

25  Rodriguez, 563 F.3d at 962 (quoting Churchill Village, L.L.C., 361 F.3d at 575); Hanlon, 150

26  F.3d at 1025 (notice should provide each absent class member with the opportunity to

27  _____

28  [16] http://www.kccllc.com.

opt-out and individually pursue any remedies that might provide a better opportunity for recovery).   The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.  Contrary to TINA's criticism (D.E. 428-1, at 16-17), the Summary Notice approved by the Court as the notice that should be used as the publication notice, provided Settlement Class Members more than "sufficient detail" regarding the terms of the Settlement – including benefits made available, the injunctive relief and the amount of attorneys' fees and costs too be requested – and if Settlement Class Members had wanted to investigate the terms further, the summary notice directed them to the Settlement website containing the Settlement Agreement, a full notice,  and other relevant Court documents.

Further, the Notice is fully compliant with due process in that it informed the Settlement Class Members of their right to opt-out or exclude themselves from the Settlement, appear through their own counsel, object to the terms of the Settlement along with the form that the objection must take, the deadlines for opt-out/exclusion or objection, the date of the final approval hearing, the scope of the claims released if a Settlement Class Member does not opt-out and remains in the Settlement Class, and the potential amounts of Plaintiff's incentive award and Settlement Class Counsels' attorneys' fee award.  Settlement Class Members read and understood this information as evidenced by the one objection received and the one opt-out.

In *In re Toys R US – Delaware, Inc. – Fair & Accurate Credit Trans. Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014), the Court approved a publication notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator.  *See also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (approving notice plan consisting of publication in USA Today, on the settlement website, and a popular website related to wedding planning); *See also Lerma*, 2015 WL 11216701 (approving a similar notice plan in a settlement involving a glucosamine product).

1    Here, the Notice Plan went beyond those threshold requirements.

2    **VI.   PLAINTIFF SHOULD BE APPOINTED SETTLEMENT CLASS REPRESENTATIVE AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS**

3

4    Plaintiff Lorean Barrera requests this Court designate her as Class Representative

5    for the Settlement Class.  As discussed above, Plaintiff will fairly and adequately protect

6    the interests of the Settlement Class.

7    Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to represent

8    the interests of the Settlement Class.  *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D.

9    346, 355 (N.D. Cal. 2005).  As set forth above, Bonnett, Fairbourn, Friedman & Balint,

10   P.C., Siprut, PC, Boodell & Domanskis, LLC, Levin Sedran & Berman, and Westerman

11   Law Corp. are experienced and well equipped to vigorously, competently and efficiently

12   represent the proposed Settlement Class.  Accordingly, Plaintiff requests the Court

13   appoint Elaine A. Ryan (Bonnett, Fairbourn, Friedman & Balint, P.C.), and Stewart M.

14   Weltman (Siprut, PC), as Lead Settlement Class Counsel for the Settlement Class and

15   Boodell & Domanskis, LLC, Levin Sedran & Berman and Westerman Law Corp. as

16   Settlement Class Counsel.

17   **VII.   CONCLUSION**

18   Based upon the foregoing, and because the proposed settlement is fair, reasonable,

19   and sufficient to warrant that the Notice Plan be approved and a final approval hearing

20   be held, Plaintiff respectfully requests that the Court enter the Final Judgment and Order.

21   DATED:   November 27, 2017          BONNETT, FAIRBOURN
                                         FRIEDMAN & BALINT, P.C.
22

23                                       s/*Patricia N. Syverson*
                                         Patricia N. Syverson (Bar No. 203111)
24                                       Manfred P. Muecke (222893)
25                                       600 W. Broadway, Suite 900
                                         San Diego, California 92101
26                                       psyverson@bffb.com
                                         mmuecke@bffb.com
27                                       Tel: (619) 756-7748
28                                       Fax: (602) 274-1199

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*Admitted pro hac vice*)
2325 E. Camelback Road, Suite 300
Phoenix. Arizona 85016
eryan@bffb.com
Tel: (602) 274-1100
Fax: (602) 798-5860

SIPRUT, PC
Stewart M. Weltman (Admitted Pro Hac Vice)
17 North State Street, Suite 1600
Chicago, IL 60602
Sweltman@siprut.com
Telephone: (312) 236-0000

BOODELL & DOMANSKIS, LLC
Max A. Stein (*Admitted Pro Hac Vice*)
Nada Djordjevic (*Admitted Pro Hac Vice*)
One North Franklin, Suite 1200
Chicago, IL 60606
mstein@boodlaw.com
ndjordjevic@boodlaw.com
Telephone: (312) 938-1670

LEVIN SEDRAN & BERMAN
Howard J. Sedran
510 Walnut Street
Philadelphia, Pennsylvania 19106
hsedran@lfsblaw.com
Telephone: (215) 592-1500

WESTERMAN LAW CORP.
Jeff S. Westerman (94559)
1875 Century Park East, Suite 2200
Los Angeles, CA 90067
Tel: (310) 698-7880
Fax: (310) 755-9777
jwesterman@jswlegal.com

*Attorneys for Plaintiff and the Class*

1

CERTIFICATE OF SERVICE

2     I hereby certify that on November 27, 2017, I electronically filed the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of

4 such filing to the e-mail addresses denoted on the Electronic mail notice list.  I hereby

5 certify that I have mailed the foregoing document via the United States Postal Service to

6 the non-CM/ECF participants indicated on the Manual Notice List.

7     I certify under penalty of perjury under the laws of the United States of America

8 that the foregoing is true and correct.  Executed on November 27, 2017.

9                                     /s/Patricia N. Syverson
                                      Patricia N. Syverson (203111)
10                                    BONNETT FAIRBOURN FRIEDMAN &
                                      BALINT
11                                    600 W. Broadway, Suite 900
12                                    San Diego, California 92101
                                      (619) 756-7748
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28