# EXHIBIT B

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - -

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

LOREAN BARRERA,

PLAINTIFF,

VS.

PHARMAVITE, LLC,

DEFENDANT.

CASE NO.: CV 11-4153-CAS

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, DECEMBER 4, 2017

LOS ANGELES, CALIFORNIA

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
PH: (213)894-0374

APPEARANCES OF COUNSEL:

ON BEHALF OF PLAINTIFF:

BOODELL & DOMANSKIS, LLC
BY: STEWART M. WELTMAN, ESQ.

ONE NORTH FRANKLIN
SUITE 1200
CHICAGO, IL 60606

BONNETT FAIRBOURN FRIEDMAN & BALINT
BY: PATRICIA N. SYVERSON, ESQ.
ELAINE RYAN, ESQ.
600 WEST BROADWAY
SUITE 900
SAN DIEGO, CALIFORNIA 92101

ON BEHALF OF DEFENDANT:

TATRO TEKOSKY SADWICK LLP
BY: RENE P. TATRO, ESQ

333 S. GRAND AVENUE
SUITE 4270
LOS ANGELES, CA 90021

INDEX

| PROCEEDINGS | PAGE |
| --- | --- |
| FINAL APPROVAL HEARING | 4 |

LOS ANGELES, CALIFORNIA; MONDAY, DEC. 4, 2017; 10:05 A.M.

- - -

THE CLERK: Calling Calendar Item No. 1.

Case No. CV 11-4153.

Lorean Barrera versus Pharmavite, LLC.

Counsel, please step forward and state your appearances.

MR. WELTMAN: Good morning, Your Honor. Stewart Weltman for the plaintiff.

THE COURT: Good morning, Mr. Weltman.

MS. RYAN: Good morning, Your Honor. Elaine Ryan for the plaintiff.

THE COURT: Good morning.

MS. SYVERSON: Good morning, Your Honor. Patty Syverson for the plaintiffs.

THE COURT: Good morning.

MR. TATRO: Good morning, Your Honor. Rene Tatro for the defendant Pharmavite LLC.

THE COURT: All right. Good morning, everyone.

Okay. Do we have any of the objectors or proposed Amicus present?

Okay. Let me tell you what I think. I intend to approve the settlement. I do have one question on attorneys' fees that I want to raise. With regard to the individual objector who is a member of the class, I've read that

objection. I'm not persuaded by it.

As far as the Amicus, Tina, I think the prudent thing is to permit their Amicus to be filed. I have considered it. I've read it. I don't think it raises anything worth discussion because it really restates everything in the class member's objection. And to my understanding, because Tina has no standing which it does not, it seems to me that it has no right to appeal from any order that I enter.

As far as the objections to the Cy Prey, it seems to me they're mooted by the fact that all cash and products have already been claimed. And I think that the $10,000 fee, incentive fee for Plaintiff Barrera is appropriate and reasonable and in line with other cases.

The only thing I'm going to ask the plaintiffs to address, though, is the attorneys' fees. If I calculate, and there is an $11.3 million computed value of the settlement. $1 million paid out in cash, $5.9 million in free product, $325,000 for class notice and administrative costs, the attorneys' fees and costs total $4.07 million leading me to believe, but I haven't given any value to the injunctive relief that we're talking about 31 percent.

Now, I'm not saying I'm not going to approve it, but I do want to know if there's any additional value that the plaintiffs attribute to the settlement value in terms of

the injunctive relief that has been provided and whether you have valued that.

MR. WELTMAN: Your Honor, well, we haven't valued it per se because quite frankly, in other matters where we have attempted to value it, we've sort of been slapped down and accused of making speculative valuations. I don't think that one can -- I think you have to sort of guess as Your Honor has to exercise her discretion, decide from, I guess, instinct.

THE COURT: May I interrupt? Is there a telephone on in the courtroom? Thank you.

MR. WELTMAN: Your Honor, it is in line with, as you know, we've had several other settlements on this type of product and it's in line with that. And we think it's valuable, but it would be disingenuous to try to -- we hired an economist the first time we did it. And it's not an easy thing to value this type of injunctive relief, but it is an important facet of the settlement because they're no longer gonna be able to make these regrowth claims and things which is important to some people.

THE COURT: Right. Let ask you the key question because as I read the settlement agreement, if I weren't to allow the full amount of fee award, any amount I did not allow would revert to Pharmavite rather than to the class. Is that accurate?

MR. WELTMAN: That's accurate, Your Honor.

THE COURT: That in and of itself has some significance here. I also am mindful of the fact that you are only receiving 78 percent of your Load Star in the case, and I know that the case has been litigated vigorously both here and in connection with the settlement activities before Judge Gandhi. And another important factor is Judge Gandhi's role in supervising the settlement.

So I think, while I think 31 percent as an abstract number may be a little high in terms of the 25 percent normally which is the standard in the 9th Circuit, it seems to me that I'm going to allow it because it is substantially less than the Load Star. Secondly, any overage would not go to the class. It would go back to Pharmavite which seems to me somewhat counter-productive. And so based on that, I think I would proceed to approve the class settlement.

MR. WELTMAN: Thank you, Your Honor.

THE COURT: Mr. Tatro, do you have anything to add to the hopper?

MR. TATRO: I do not, Your Honor. There was a final approval order that the plaintiffs submitted with their papers. Will that be the final order of the Court?

THE COURT: It will be, but I will be quite honest I've got to find it amid the flurry of papers I received. I think the cleanest and simplest thing would be just to

resubmit a clean copy of the order that you all intend for me to sign and go from there. Do you have it, Mr. Tatro?

MR. TATRO: I have a clean copy.

THE COURT: Okay. Why don't you let the plaintiffs to take a quick look to be sure that we all agree that's the order and I'm happy to sign it today. Okay. You may approach.

MR. TATRO: Your Honor, I think that does not have the attorneys' fees and costs filled in; is that correct?

THE COURT: Well, let's just be sure. The attorneys' fees are $3,475,000; is that right?

MR. WELTMAN: Correct.

THE COURT: And the costs are $600,000. Okay. And incentive award is $10,000; is that correct?

MR. WELTMAN: Correct.

MR. TATRO: Correct.

THE COURT: I'm going to give it to the courtroom deputy and hopefully, we have it right.

Congratulations, everybody.

MR. WELTMAN: Your Honor, I'm sure this is not the first time, but thank you for your patience and your diligence.

THE COURT: Thank you all for your hard work.

MR. WELTMAN: And please express our thanks to Magistrate Gandhi.

THE COURT: I'll do that. You'll have an opportunity to retain him in the very near future when he leaves us and joins JAMS.

MR. TATRO: Your Honor, I join in with what Mr. Weltman just said. Thank you very much.

THE COURT: Thank you.

(Proceedings were concluded at 10:14 a.m.)

CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES    )
                         ) SS.
STATE OF CALIFORNIA      )

I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES.


DATE: JANUARY 3, 2018


  /s/  LAURA MILLER ELIAS

LAURA MILLER ELIAS, CSR 10019

FEDERAL OFFICIAL COURT REPORTER